Case number 19-1631, Angelo E. Afrate et al. v. Angelo E. Afrate Inc. et al. Court of argument is not to exceed 15 minutes per side. Mr. Rose for the appellants. Good morning. May it please the court, James Rose appearing on behalf of the appellants, members of the I. Afrate family. With the court's permission, I would like to reserve five minutes for rebuttal time this morning. All right. Thank you. So, as mentioned, I represent members of the I. Afrate family who sold their family business, a construction company, in 2013 to employees of the company through an employee stock ownership plan, an ESOP. And the transaction was structured as a seller finance security transaction, and effectively, without belaboring the details, which are briefed extensively, my clients loaned the corporate defendant $37 million. The corporate defendant then used those funds to purchase all of the stock in the original construction company held by my clients. And the terms of repayment over a number of years, and more specifically, how those payments were made and when they were applied, is the focus of this dispute. This is primarily a Rule 12 case, and secondarily, I think, a securities fraud case. And I describe it that way, recognizing fully that the parties have extensively briefed the securities law requirements, the requirements for how to properly plead a securities fraud claim. And those are relevant here, but it's important to keep in mind what the district court did and did not do. And this is why I refer to it as primarily a Rule 12 case. The district court did not say, did not rule, that these plaintiffs failed to allege the facts that a plaintiff must allege in order to properly plead a securities fraud claim. And the district court also did not say that these plaintiffs failed to allege all of the elements that a plaintiff must allege under Section 10b of the Securities Exchange Act. What the district court did say is that these plaintiffs can never, ever assert a securities fraud claim against these defendants because these plaintiffs are warrant holders. And we've briefed the fact that as a matter of law, that is just wrong. And there doesn't seem to be any opposition on that point anymore. Now, although the transaction here closed in 2013, the fraud that we are alleging did not occur until 2016. That's also something that tripped up the district court. The district court ruled as a matter of law that because we were complaining of statements and actions and omissions that occurred in 2016, and that was nearly four years removed from the date of, quote, closing, unquote, we couldn't possibly be asserting that those statements and actions and omissions occurred in connection with a securities transaction. But that's also wrong as a matter of law because there was an additional series of securities transactions that occurred in 2016. And that's what I want to talk about now. I want to talk about specifically what constituted fraud in this case. Let me ask you one thing, counsel. If it appears that what transpired here does not, in terms of alleged misrepresentations, does not, in our view, constitute securities fraud under the applicable legal standards, would we be, and could we as the court of appeals uphold the district court for reasons other than the district court's ruling? In other words, on grounds not addressed by the district court at this point. As I understand it, the district court did not rule pursuant to a summary judgment motion or anything like that. He just said, I believe this is a failure to state a claim kind of a case. But if the record reflects that there were no material misrepresentations that would constitute securities fraud, and I'm not saying that's the case, but if that did turn out to be the case, where would that leave our review of this matter? Well, in short answer, your honor, I don't think there is anything in the record that can be used to sustain the district court's ruling, if that's what you're asking me. I don't think there's anywhere you can get there if you don't sustain, there's nothing in the record that could sustain that ruling. Well, I know that's your position, but if we disagreed with you, where would that, what would be the appropriate standard of review for us to employ as the reviewing court on appeal? Well, I think it's de novo review. I do think the court has the authority to do what the district court should have done. That's one of the things I'm asking you to do, is to review the allegations that were asserted and conclude that they do rise to the level necessary in order to plead the claim. But I also think there are a couple other ways you could get there. You don't have to go point by point through the allegations, through the six elements that you typically see associated with a securities claim. You could also conclude that there's a duty to update present here. There is no duty to, there is no lack of duty to warrant holders, as the defendants urged, but there is specifically a duty to update. And this is something that, there's a bit of a split in the circuit. I think, counsel, you're arguing that there is a duty to update an interpretation with an interpretation that apparently the plain language did not, did not, in your client's argument, it did not sufficiently inform them. Yet, as you know, the argument by the move-ins was, it's right there in plain language. It expires after 60 days, right? And so your position, as I understand it, your position for your clients is, oh, but we didn't quite read it the way you read it. And you really ought to have come back to us and said, no, we read it this way, and you're about to miss the deadline here. And that is so atypical of a fraud case, especially in the scenario of a stock kind of transaction, where the language says what it says. So I'm just giving you a softball here so you can respond to that, but it is atypical from a fraud standpoint to say duty to update in contravention of plain language. So what I'm concerned with is that aspect of your position. Understood. Thank you, Your Honor. So let me clarify. That's really not the claim. We're not arguing that they had to sit us down and read us the language of the warrants. Did you just say update? I thought I heard you say update. We are arguing that they had a duty to update their statement. We are not arguing that they had a duty to interpret the contract for us. There's a distinction there. Really? I'm needing your help with that distinction. Right. So the distinction is that in 2016, three years after the documents were signed, they changed the way they were applying payments. The parties had a conversation about this very topic in 2016. And at that time, Mr. Adcock, the individual defendant, proposed making pre-payments in non-pro rata fashion. And our client said, that's okay, but only if you continue to apply those payments pro rata as required by the documents and as you've always done. The only way we'll agree to something different is if we amend this deal. If we entered into new transactional documents, changing the original intent of the deal. No new documents were executed. The deal was not modified in any way. And yet, the defendants, without telling us, changed their behavior. It's not that they changed their interpretation of the contract. From 2013 until 2016, they applied all payments in a pro rata manner. Beginning in 2016, after reaffirming that that would continue, they then changed the way they applied payments and began applying them in a non-pro rata manner. And they did that on purpose in order to attempt to trigger the warrants in staggered fashion instead of at the end of the deal when all of the debt had been paid. Does that answer your question, Your Honor? It's not a matter of interpretation. It's a matter of updating the statements they made previously, which were truly made. Can you tell me where the support, the evidential support, the evidentiary support is for this conversation that you just alluded to? Where is there in the complaint? I can tell you where it's alleged. There's no affidavit, Your Honor, because this complaint was dismissed at the pleading stage. That's part of the problem. It's alleged in paragraphs 74 through 77 specifically. That's where we describe this communication that happened in 2016. And then there is a series of e-mails that were attached to the pleadings that show that after this communication, what the defendants did is... I think that was just feedback. Go ahead. Oh, okay. I'm sorry. My time has expired, but I do want to try to answer your question, ma'am, if I can. What happened next is the defendants forwarded a proposed amendment to my clients. And that proposed amendment would have modified the deal in the way that they tried to modify it. It would have allowed them to apply payments in a non-prorata fashion. But we rejected that amendment. We did not sign it. No amendments were ever executed. The deal never changed. Where the fraud comes in is that without telling us in 2016, they then modified their behaviors and changed the way they applied payments unilaterally, and they did it on purpose without disclosing it, in order to try to change the trigger timing of these warrants. That's what's fraud. And then why isn't any purposeful breach of contract a securities violation? Well, first of all, you would have to have a contract that involves a serial securities, like you do here. Right. But I'm glad you asked that question because that's exactly how the defendants pivoted away from their fraud in the district court, and that's exactly what the district court seemed to believe, is that because this was also a breach of contract, it couldn't, therefore, be a securities violation. That's just not true. The vast majority of securities fraud cases also involve a breach of contract. If our claim here was limited to the terms of the warrant and the way the defendants want it to be, if all we were arguing is they didn't follow the terms of the warrant, then maybe we would just have a breach of contract claim. But that's not our claim. Our claim starts with the notes. Our claim is that the notes required them to apply payments in a certain way, and they didn't. And because they didn't, and because they were deceitful about it, because we had a conversation about it, and they undertook to speak on it. Once they undertook to speak on it, they had an obligation not to omit any material facts and not to make any statements that would be misleading. But they did. They misrepresented the way they were going to apply those payments in 2016, and that's what takes it out of the realm of a simple contract claim, Your Honor. Mr. Rose, could it not be, could it not, was there no way for your clients to discern this change in behavior, the change in how the pro rata versus non pro rata? Was it, it was in whose records, and why were you not privy to that? Correct. There was no way for us to ascertain that, Your Honor. They were in charge of applying the payments. That goes to another point. Sorry. That's the answer to the question. No, we have alleged there was no way for us to know that, and we specifically did not follow up on it because they assured us they would continue to apply payments in the manner required by the documents. So everything rests on that 2016 conversation. And the omissions that followed and actions that followed, yes. Okay. That's helpful. It's really the omissions after that conversation, Your Honor. It's really what happened after. But then they had a duty to communicate with us once they decided not to do what they had reaffirmed they were going to do in 2016. Yes. Okay. I guess your time's up, Counsel. Thank you very much. Mr. Allen for the appellees. Lance, we are not hearing you when time is up. We are not hearing you give notice when time is up. Will you be able to pop in and give us that heads up, please? Yes, I'm sorry. The last time the attorney had mentioned his time was up. I'm sorry. Thank you. Yeah, we can't go by the attorneys because they don't always tell the truth. I guess I'll make sure I interject. Please. On that note, Your Honor, may it please the Court, Matt Allen for the defendants and appellees, Robert Adcock, and Angela Mias-Lady. And if I may, let me start with a question that Judge Clay raised to my client, Mr. Rhodes, about whether the district court addressed the relevant elements of security fraud and whether the court can affirm on different grounds or additional grounds. And the first point is that the district court did address the relevant elements of security fraud. In the record at page 47, at pages 756 and 757, Judge Connell went through and talked about the fact that there is no material omission, that any omission wasn't in connection with the purchase of sales and security. He talked about reliance, no duty, and dissenter issue of not being able to rely on another party's subjective interpretation of the contract. And so the district court actually did address the elements, and it did so based on the full briefing below, and Matt, I told you, is on the brief on appeal. Mr. Allen, are you on speakerphone? I'm sorry to interrupt, but we're getting a lot of feedback from your line, and the audio is pretty poor. I'm not, and this is disappointing. I mocked on this phone, on these headphones. Let me, I have ear pods in. Is this any better? No. Yeah, it's hard to hear him. There's a lot of interference on the line. All right. Let me, I've just taken the ear pods out, and I'm on speakerphone. Is that better? Yeah. Not really. No, it's still pretty poor, but I guess we'll have to make do. And everyone else should be careful about moving papers, et cetera, that can interfere. Okay. All right. Let me, if this is not working, I could take this out on the Valenza and outside of my study, but as I was saying, to address Judge Clay's comments, the district court did address the element of federal security fraud, and if for some reason the court does not find persuasive that the district court analyzed an element in sufficient detail, the relevant statute governing this court's operation and review of district court's opinion, that 28 U.S.C. 2106 and a host of Sixth Circuit authorities allows this court to affirm the dismissal on alternative or modified grounds. So let me get back to what this case is about, and I think Judge White was exactly right. I believe it was Judge White who talked about this case being atypical from general security fraud claims, and the central failure of the plaintiff's case is that the plaintiffs in this case are not shareholder fiduciaries. It requires the protection of the federal security clause. The plaintiffs largely rely on cases involving public companies issuing shares to shareholders, and in those cases the shareholders are owed a fiduciary duty by the issuing company, and that's because the shareholders in those cases are totally reliant upon the representations of corporate insiders. The shareholders and the persons cited by the plaintiffs don't have attorneys negotiating detailed written contracts about the amount, value, and timing of their interest, but the plaintiffs do. Did someone have a question? I'm sorry. No, we didn't. The shareholders and the persons cited by the plaintiffs, they're not company board members that control the company's satisfaction of their own contracts with the company, as the plaintiffs here and their lawyer did. Counsel, I understand you to be saying that just as a matter of law, this relationship, although it involves warrants, does not allow application of the securities laws. Do you have a case that says that, that it has to be a publicly held corporation or there has to be some sort of distance between the parties? I have the Tadiza case, and this is the case with facts, I think, most closely to the facts in this case, and that's a Third Circuit case from 2004, and it's that 107 Federal Appendix 281, and the pinpoint site is 284. And in that case, the court dismissed the Section 10b claim, because the plaintiff in that case had a written warrant with the issuing company. And the court said, when you've got a written warrant, that's where you find your duties. It's a contractual duty case, and you need to go to state court to find your remedies. You're not going to see, you've got a remedy, you don't need the federal securities laws, and I think that gets kind of the point. The duties are defined by the terms of the contract. And I also point to the Heldren case, the Supreme Court case that we cited, at 315 U.S. 194. And in that case, the Supreme Court expressly said that a warrant holder has a contract claim if the exercise of her warrant is not honored. And not only that, the Supreme Court said that the claim of the warrant holder was, quote, wholly contractual, end quote. And so I think with these cases that have written warrants and written contracts, these cases look to the contracts to find the duty or lack thereof. And I guess I would call it the federal securities law version of the economic loss doctrine in state court, that when you have an express written contract that governs what the parties do and don't do, that's the source of your legal remedies, not the federal securities law. And I sit just on a legal argument point when you address the federal securities laws. You know, in this case, the plaintiffs say that the defendants didn't update them on the warrant expiration date. But as this panel has indicated with their colloquy with my friend Mr. Rose, the plaintiffs were in the plaintiff's hands the whole time. And to answer the question that was posed to my friend Mr. Rose, that's what he had to look. It had been the entire time. But I don't, counsel, that's not, I don't think that's the claim at least as clarified here. The claim is not when the warrant was going to expire. It was how you were doing the accounting of the payment. Because that's what determined the expiration date. And that there had been an earlier representation that everything would remain pro rata unless you notified them, unless they agreed otherwise, and that you would honor that. And then you didn't. Right. So to address that question, I think, first of all, there was no statement identified by Mr. Adcock. The paragraph provision Mr. Adcock points to alludes to an e-mail that one of the plaintiffs, Angelo Jr., sent to Mr. Adcock that expressly said, I want you to pay non-pro rata payments. I want you to pay my dad first. And if there's anything that needs to be sent, send it. But that's not a statement by Mr. Adcock. And secondly, Mr. Adcock didn't need to send anything because it was the plaintiffs who controlled the board of directors. And under the language of the notes, it was the board of directors that determined when and how these notes must be prepared. So the plaintiffs were in control. They demanded the payment. And then they accepted that pro rata payment without objection. But this sounds a lot like a summary judgment issue. We're talking facts here. Well, I don't think it's a summary judgment issue, Your Honor, and I'm curious why. The complaint specifically asked all the documents that we're talking about here. And the district court properly considered, without any objection by the plaintiffs, this e-mail and the relevant agreements and the Spout-Lucius-Ross analysis. And those agreements and documents were specifically referred to in the complaint. And the complaint, in our view, pretty badly misquoted what they are. And so the Supreme Court in Pell Labs and this court in Greenberg says that when they do that, we can reference those agreements and make that analysis. And we did in this case. And, again, without any objection by the plaintiffs to consider these issues. So we believe the issue was clearly presented. We believe the court properly, you know, considered these documents and that their analysis should be affirmed for the reasons we're talking about today. I have a question, Mr. Allen. This is Judge Cook. Your brief focuses on a crucial feature of attendee action, and it requires a manipulative or deceptive device. I think the law, and you tell us that the law is a century old, the device being the security. Correct? Yes, is that what the point is from your brief? The security itself must be manipulative or deceptive. Is that correct? No, I don't believe so, Your Honor. I think that the claim in this case is a Rule 10b-5b claim. And so what the plaintiffs allege is that they say there were statements and omissions made in connection with the purchase or sale of the security that was the fraud in this case. Now, again, this wasn't briefed by the other side, but when you talk about manipulation cases and scheme cases, these are the Rule 10b-5 A and C cases that talk about more of what you're alluding to, Your Honor. I'm not alluding to it. I'm reading your brief, okay? So it's on page 17 of your brief that says it's not securities fraud under any pleading standard. Securities fraud for a century has been required a manipulative or deceptive device, citing 10b. And you say, well, this can't be a device because they're arguing an interpretation as a device. Now, address that, please. Thank you for clarifying, Your Honor. I see that now. You know, quoting the Section 10b statute, yes. I think that, you know, when you're talking about Section 10b, you know, it can be that the security itself was a deceptive device or that statements and omissions in connection with the purchase or sale of that security. But I do believe our argument is more focused on what the alleged omissions are that the plaintiffs say we failed to disclose but had a duty to. Am I answering your question more directly there? Yes. Okay. And just to, you know, close the loop on some of the questions and colloquies that were raised with Mr. Rose, there was discussion of the duty to update, and I think it was, you know, Judge White who remarked that, you know, the duty to update really is their failure to tell you how to interpret the warrants. We think that is certainly the case here. You know, the duty to update, we read what we said about it. We think that it's not, you know, it's not a doctrine that's recognized in the Sixth Circuit, and even the pre-PSLRA First Circuit case that they cite, you know, didn't apply it because of what it viewed as the grave dangers of just having the ability to kick out statements willy-nilly and claim security fraud because somebody didn't update it. But really, I think the substantive failure of the duty to update gets to the fact that we had a written warrant that expressly and unambiguously told the plaintiff exactly what to do, and it gets to the point of all of the duty to update cases that the plaintiff cited, each and every one of them involved a public company reporting to the SEC about what was happening inside the company. And many of those cases are totally inapplicable to this Section 10B case under the 1934 Security Exchange Act. Many of the cases they cite for this duty to update, they're control person claims, they're relating to the 1933 Securities Act, they relate to class actions, but none of them, none of them involve a closely held private company. They don't involve sale of a private company by the plaintiff to the company and its shareholders. They don't involve a plaintiff that was a contractual counterparty and creditor to the defendant, and they certainly don't involve a contract that told the plaintiff exactly what to do. And I think that, and I can't remember which judge on the panel made this observation, but it was essentially, gee, if they had a duty to disclose what's in this contract, wouldn't that make all contract claims fraud cases? And I think that's true. We cited a case below, and it's a non-binding Northern District of Illinois case, a spalding case. But that court, I think, hit that right in the nose when they said, if the plaintiff had a duty to disclose their respective interpretations of the contract, every brief of contract lawsuit would be flawed. I think the cases and the authority that we cited in our papers carry this point home, and I see that my time is now up, and unless the panel has any further questions, I will rest. All right. Mr. Rose, you have five minutes for rebuttal. Thank you. I recognize that I went well over my time initially, and I apologize for that in trying to answer the court's questions. I don't need five full minutes for rebuttal. I'm happy to answer any questions the court has, but there is one comment I want to make in response to something that Mr. Allen said. This ultimately will be a factual question, but the makeup of the board is not something that harms our claim. The makeup of the board is something that supports our allegation that these actions were done with scienter. Our clients did not control the board during the relevant period of time, and we've alleged this. Again, these allegations are interspersed throughout paragraphs between paragraphs 74 and 96, but it is true that at the beginning of 2016, before this scheme was put into play, the board was comprised of effectively three members of the I. F. Rady family. It really was two I. F. Rady family members and the family lawyer. How about after the quote scheme? Correct. Were the plaintiffs represented in any fashion on the board? We're told that they were by Mr. Allen. Correct. And as alleged in the complaint, the composition changed during the course of 2016 at the direction of the individual defendant. That doesn't tell us much. Right. I'm sorry. By the end of 2016, two of the three board members were not I. F. Rady. There were no I. F. Rady family members on the board. The family lawyer was still on the board, but two of the three positions were controlled by Mr. Adcock, and that is part of the device, if you will, the manipulation that occurred behind the scenes. That's precisely what we're alleging. Now, ultimately, that will be a fact question is how that happened, but what we've alleged and what the documents show is that in November of 2016, Mr. Adcock had himself appointed to the board. That's after one of the I. F. Rady's had resigned. So the board went from a three-member board controlled entirely by I. F. Rady's to, at that point in November 2016, a four-member board with two I. F. Rady representatives and two, I'll just say Adcock representatives, two representatives that were not I. F. Rady's. I'm sorry, but did the topic that we're talking about here arise at the board level, and anyone, is there records that you could point to to say, eh, this was a little shady, including the family lawyer? Was the board activity part of your claim? The board activity, the manipulation of the board, yes, is part of the claim. Manipulation is, okay, I don't know. Is this in the record? Where will we find the manipulation of the board, including or challenged by the family lawyer? Well, how that happened, Your Honor, is not in the record because, again, this complaint was dismissed at the pleading stage. The allegations are there. The allegations are between paragraph 74 and 76. Okay. Got it. Thank you. Okay. Thank you. That's the only point I want to make independently. Since we're talking about the complaint, I'd like to, I'd like you to point me to the exact language that you are relying on to establish this claim that there were representations in 2016 that all payments would be accounted for pro rata, by the company pro rata, notwithstanding the payment to particular individuals, and that the company agreed that that would be the case unless there was a writing to the contrary. So can you tell me the exact page of the complaint or the paragraph number and the exact language? Yes, Your Honor. The best and shortest answer to that question is that it's paragraph 74 of the complaint. Hold on. But the answer is actually a little bit. Okay. Okay. Okay. Paragraph 74 and the language is? The language is in the first sentence talks about Angelo E., that's one of the plaintiffs, told Adcock, that's the individual defendant, that if the company was going to make a prepayment, his portion should be paid to Angelo Sr. Next sentence, however, Angelo E. instructed Adcock that if there was a prepayment to any one note holder, appropriate documentation needed to be executed by all of the plaintiffs to reflect the change in payment terms and any necessary corresponding changes to, here's the important part, to preserve the original intent of the transaction documents. Throughout the preceding 73 paragraphs of the complaint, the thrust of the allegation is that the original intent of the transaction documents is to ensure that And that language is right in the notes. It's sections 1.3 and 1.4 of the notes. Right. Okay. So then. Your Honor, Mr. Rose has. I'm sorry. Mr. Rose has exhausted his time, but I just wanted to let you know, Judge White. Okay. Thanks. Okay. And then it goes on to say, despite promising to do so, neither Adcock nor anyone else acting on behalf of the company, nor did plaintiffs sign any appropriate paperwork. Now, you say despite promising to do so. I mean, is there anything? How did he promise to do so? My understanding is that in the communications between the parties, he promised to do so. There's also an e-mail reflecting that he did send a proposed amendment, but not an executed document because my clients then refused to execute that document. That e-mail is attached to our reply brief. Was it produced to the district court? It is not in the record in the district court. No, it is not. It is referenced, and it was produced in response to the Appalese presentation of a state court proceeding where fraud claims were dismissed. So they asked this court to take judicial notice of the state court proceeding documents that are publicly available, and it is filed and is publicly available in that case. Not in this one. The e-mail is not a part of this record, Your Honor, but there are references to it through those communications in this paragraph. Well, okay. I think we have a fix on your position here. I think we can deem this argument submitted and perhaps move to the next case. Can I just ask one question? I'm sorry. Can I just ask one question? Sure. Is Castle still there? Yes, Jim Rose is still here. Sorry, go ahead. Was there ever a request of the court to amend to allege certain fraudulent acts with more specificity? No, because none of those allegations were addressed at all. Okay. Thank you. All right. The case is submitted, and you may call the next case.